UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| A.A.Z.A., et al., | ) | |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | Case No. 4:07CV1874 CDP |
| DOE RUN RESOURCES CORPORATION, et al., | ) ) ) ) | |
| Defendants. | ) | |

## **MEMORANDUM AND ORDER**

Plaintiffs are Peruvian children who allege they have been injured by exposure to toxic substances from a Peruvian mine. Through their next friends, they filed this action in Missouri state court alleging state tort claims against the American companies who they say control the mine. Defendants removed the case to federal court, alleging that federal question jurisdiction exists because the claims arise under the federal common law of foreign relations. Plaintiffs seek remand based on lack of subject-matter jurisdiction, and the defendants seek dismissal under a number of arguments. Although I could reach the motion to dismiss, I see no reason to do so. I conclude that the plaintiffs' claims arise under state law and that this court lacks subject-matter jurisdiction.

Background

This action was filed by 137 citizens of the Republic of Peru in the Circuit Court for the City of St. Louis, Missouri. The plaintiffs are or have been residents of La Oroya, Peru, and they allege that they have been exposed to and injured by exposure, as children or while *in utero*, to lead and other substances released by a metallurgical complex located in La Oroya, Peru.[1]

The La Oroya complex was built, owned and operated by Cerro de Pasco Corporation starting in 1922. In 1973, the Peruvian government expropriated the La Oroya Complex and transferred it to Empresa Minera Del Centro Del Peru S.A. ("Centromin"). Centromin is a Peruvian corporation that is wholly owned by the Republic of Peru. Centromin operated the La Oroya Complex for 23 years, until it contributed the assets of the La Oroya Complex to a different Peruvian company, Metaloroya, that was established to divest Peru of its equity in State-owned companies.

Doe Run Peru S.R.I., is a limited liability company organized and existing under the law of Peru, which was created to purchase the stock of Metaloroya in

---

[1] Plaintiffs are represented by their Next Friends, Sister Kate Reid and Sister Megan Heeney. The Next Friends have worked with research scientists from the St. Louis University School of Public Health, who have conducted studies on the people and environment at La Oroya.

October 1997.  Doe Run Peru is a wholly owned subsidiary of the defendants in this case, but Doe Run Peru is not itself a defendant in this case.  Plaintiffs' second amended complaint alleges that the Missouri and New York corporations named as defendants are the real owners of the La Oroya Complex and that Doe Run Peru is nothing more than a shell intended to shield these defendants from liability.

In connection with the sale of Metaloroya to Doe Run Peru, Centromin retains some responsibilities in environmental matters.  Centromin has assumed liabilities for damages and claims by third parties arising from the La Oroya Complex from 1922 through October 23, 1997.  Before to the transfer of the La Ororya complex, Peru approved an Environmental Adjustment and Management Program for the Peru Complex.  Additionally, Peru retains ownership of its mineral resources, and companies must obtain a concession in order to engage in metallurgical operations in Peru.

After the lawsuit was filed in state court, the President of the Council of Ministers for the Republic of Peru, the Hon. Jorge Del Castillo Galves, sent a letter to the U.S. Ambassador to the Republic of Peru, objecting to the maintenance of this lawsuit in the United States.  After this letter was sent, the Peruvian Congress held a hearing investigating and discussing Del Castillo's action.

Discussion

Once a case is removed to federal court under 28 U.S.C. § 1446, it must be remanded to state court if "at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c). Defendants removed the case based on federal question jurisdiction, under 28 U.S.C. § 1331. Whether federal question jurisdiction exists "is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of plaintiff's properly pleaded complaint." Rivet v. Regions Bank of Louisiana, 522 U.S. 470, 475 (1998).

Plaintiffs' complaint asserts no claims under federal law, but instead contains only Missouri state-law claims. The defendants argue that the complaint presents a federal question on its face under the federal common law of foreign relations because the lawsuit implicates the vital economic and sovereign interests of Peru. The roots of the federal common law of foreign relations lie in the Supreme Court's decision in Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398 (1964). In Sabbatino, the Supreme Court held that where a plaintiff's claims arise under the act of state doctrine, the federal common law of foreign relations would be invoked. Under the act of state doctrine, "the courts of one country will not sit in judgment on the acts of the government of another, done within its own

territory." 376 U.S. at 416 (quoting Underhill v. Hernandez, 168 U.S. 250, 252 (1897)). The Supreme Court in Sabbatino did not address whether this gave rise to federal subject-matter jurisdiction, but instead only addressed the issue of whether federal or state law would govern the case. Id. at 421 n.20.

The issue before me addresses the interplay between the well-pleaded complaint rule and the federal common law of foreign relations. Whether the federal common law of foreign relations can provide subject-matter jurisdiction in situations such as this where a foreign plaintiff's complaint raises only state law claims has been addressed by very few courts, with divergent results. Compare Torres v. Southern Peru Copper Corp., 113 F.3d 540 (5th Cir. 1997), with Patrickson v. Dole Food Co., Inc., 251 F.3d 795 (9th Cir. 2001). Under the approach developed by the Fifth Circuit in Torres, a district court should examine a number of factors to determine whether issues involving a foreign state's vital economic interests and sovereignty are at stake. Courts that have applied this approach have found a foreign state's statement that the suit would affect its interests and sovereignty to be a decisive factor. See Pacheco de Perez v. AT&T Co., 139 F.3d 1368 (11th Cir. 1998); Sequihau v. Texaco, Inc., 847 F. Supp. 61 (S.D. Tex. 1994).

At least one other circuit, however, has rejected this approach. In

Patrickson, the Ninth Circuit held that under the well-pleaded complaint rule, the court must look first to the plaintiffs' formulation of the case to determine whether the case requires an evaluation of an act of state or application of any principle of international law. 251 F.3d at 800. According to the Ninth Circuit, the federal common law of foreign relations should not be treated any differently than any other area of federal law. Id. at 803. The Court pointed out that federal courts are courts of limited jurisdiction who can exercise only the jurisdiction that Congress has given us: "If federal courts are so much better suited than state courts for handling cases that might raise foreign policy concerns, Congress will surely pass a statute giving us that jurisdiction." Id. at 804.

The Ninth Circuit also endorsed the reasoning articulated in In re Tobacco/Governmental Health Care Costs Litig., 100 F. Supp. 2d 31, 36-38 (D.D.C. 2000), which held that a federal court cannot not assert jurisdiction over a case "simply because a foreign government has expressed interest in its outcome." Patrickson, 251 F.3d at 803. The Ninth Circuit was particularly troubled by the Eleventh Circuit's decision in Pacheco de Perez that federal jurisdiction hinged upon whether a foreign government has taken a position in support or in opposition to the litigation. Id. at 804 n.9. The court pointed out that there is "no logical connection" between the effect on a foreign government's sovereign

interests and federal question jurisdiction: "That the case is litigated in federal court, rather than state court, will not reduce the impact of the case on the foreign government. Federal judges cannot dismiss a case because a foreign government finds it irksome, nor can they tailor their rulings to accommodate a non-party." Patrickson, 251 F.3d at 803.

The plaintiffs' second amended complaint alleges only state law claims of negligence, civil conspiracy, and strict liability. The acts and damages are all alleged to have taken place by these defendants at a time when these defendants – not an entity of the Peruvian government – owned and controlled the mine. The questions presented by the case are whether American defendants made decisions or took actions in the United States that caused the plaintiffs' damages. Plaintiffs do not allege that Peru participated in these activities or that defendants acted under color of state law. Plaintiffs do not seek to impose liability on the Republic of Peru or on any company owned by Peru. While defendants may contend that Peru was involved in the activities or that Peru shares the liability for the plaintiffs' injuries, these arguments constitute defenses, and under the well-pleaded complaint rule, those defenses cannot form the basis for federal subject matter jurisdiction.

I agree with the Ninth Circuit that Sabbatino did not create an exception to

the well-pleaded complaint rule.  Patrickson, 251 F.3d at 801.  Even if foreign relations are implicated by the defense in this case, "Sabbatino does not say that federal courts alone are competent to develop this body of law."  Id. at 802.  Rather, Sabbatino's reasoning "makes sense only if one assumes that state courts will be called upon to apply the law of foreign relations."  Id.

I will remand this case to state court, although I recognize that it is factually similar to Torres.  The Ninth Circuit, rather than the Fifth, has correctly analyzed the law.  Federal courts are courts of limited jurisdiction, whose power depends on an explicit grant of jurisdiction.  Kokkonen v. Guardian Life Ins. Co. of America., 511 U.S. 375, 377 (1994) (citations omitted).  "What Congress has not done is to extend federal-question jurisdiction to all suits where the federal common law of foreign relations might arise as an issue."  Patrickson, 251 F.3d at 803.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiffs' motion to remand [#19] is granted, and the Clerk of Court shall remand this matter to the Circuit Court of the City of St. Louis, Missouri from which it was removed.

**IT IS FURTHER ORDERED** that the Temporary Restraining Order remains in effect following remand, unless otherwise ordered by the state court.

**IT IS FURTHER ORDERED** that defendants' motion to dismiss [#35]

and plaintiffs' motion to add parties [#59] remain pending for determination in state court.

                                                                                  _____
                                                                                  CATHERINE D. PERRY
                                                                                  UNITED STATES DISTRICT JUDGE

Dated this 18th day of March , 2008.